Present:  All the Justices

SETTLEMENT FUNDING, LLC

v.  Record No. 061373    OPINION BY JUSTICE ELIZABETH B. LACY
                                          June 8, 2007
CARLA VON NEUMANN-LILLIE

          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    M. Langhorne Keith, Judge

     In this appeal we consider whether the circuit court

erred in refusing to apply the law of the jurisdiction

stipulated in the choice of law provision of a contract and in

its application of Virginia's usury law to the provisions of

that contract.

                              FACTS

     On November 12, 1996, Carla Von Neumann-Lillie (Lillie)

redeemed a winning ticket in the "Money for Life" instant win

game of the Virginia Lottery.  The prize was $1,000 per month

for the duration of Lillie's life.

     Lillie entered into a loan agreement with WebBank

Corporation (WebBank) for $29,000 plus interest.  Lillie was

to repay the loan in monthly installments of $500 for a period

of 178 months, commencing April 1999 and ending January 15,

2014.  The loan agreement contained a choice of law provision,

stating all disputes would be determined in accordance with

the laws of the State of Utah.

Lillie also executed a secured promissory note in which she promised to pay WebBank, its successors and assigns, the principal amount of $29,000 plus interest and a UCC-1 Financing Statement, which was filed in the Circuit Court of Prince William County on March 10, 1999. WebBank assigned its right, title, and interest in the loan to Settlement Funding, L.L.C. Lillie then submitted a change of address form to the Virginia Lottery directing the Lottery to send her award payments to a post office box in Georgia owned by Settlement Funding. Settlement Funding collected the loan payments from the Virginia Lottery checks and refunded to Lillie any amount received over the loan payment due.

After Lillie had paid $13,500 on the loan over 27 months, she contacted Settlement Funding to pay the balance of her loan. Settlement Funding informed Lillie that, including interest and fees, the prepayment amount was $67,023. Lillie claimed she was unaware that any interest was due under the loan and stopped all payments to Settlement Funding, thereby defaulting on the terms of the loan agreement. Subsequently, Settlement Funding notified the Virginia Lottery of its security interest in Lillie's Lottery prize, that Lillie had defaulted on her loan, and that all payments due to Lillie "must be paid and delivered" to Settlement Funding.

On September 21, 2001, the Commonwealth of Virginia State Lottery Department filed a Bill of Complaint for Interpleader, asserting that pursuant to Code § 58.1-4013 Lottery prizes are not assignable. The circuit court granted the interpleader, and directed all prize installments be paid to the Registry of the Court.[1]

On October 31, 2001, Settlement Funding filed an answer in the interpleader action and a Cross-Bill against Lillie. The Cross-Bill requested equitable relief in the form of a court order declaring Settlement Funding's security interest in the Lottery payments valid and enforceable and ordering the Virginia Lottery to pay the Lottery Prize Payments to Settlement Funding.

On May 15, 2002, Lillie filed an answer to Settlement Funding's Cross-Bill in which she asserted four affirmative defenses. First, Lillie asserted that under Code § 58.1-4013, the security interest in and assignment of the Lottery winnings was unlawful, and therefore void and unenforceable. Second, Lillie asserted that the interest sought under the loan agreement was usurious. Third, she claimed that the loan agreement, Security Agreement, Secured Promissory Note, and

_____

[1] The litigation was originally filed in the Circuit Court for the City of Richmond but subsequently transferred to the Circuit Court of Fairfax County.

3

UCC-1 Financing Statement were void and unenforceable under the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. (Truth in Lending Act). Finally, she asserted that Settlement Funding could not recover in equity because it acted with unclean hands. Lillie also filed a third party Bill of Complaint and Cross-Bill against Settlement Funding asserting breach of contract, usury, avoidance, and fraud actions.

In an opinion letter dated November 7, 2005, the circuit court held that the assignment of Lottery proceeds was unlawful pursuant to Code § 58.1-4013 and thus Settlement Funding did not possess a valid security interest in Lillie's Lottery winnings. The circuit court also granted Settlement Funding leave to file an amended pleading against Lillie seeking a money judgment for a specific sum due under the note and loan agreement.

Settlement Funding filed an amended "Cross-Claim" seeking judgment against Lillie for the loan's principal balance plus accrued interest and penalties for a total of $253,727.89 plus interest and legal expenses. Settlement Funding asserted four counts against Lillie: breach of contract, quantum meruit, promissory estoppel, and unjust enrichment. Lillie raised several affirmative defenses to the Cross-Claim including: usury, violations of the Truth in Lending Act, fraud, and unclean hands. At the hearing on Settlement Funding's Cross-

4

Claim, Settlement Funding argued that Lillie's fraud claim should be stricken, that the Truth in Lending Act did not apply, and that Lillie's usury defense based on Virginia law was improper because the loan agreement contained a choice of law provision designating Utah law as controlling, and Utah does not recognize usury protections. The circuit court granted Settlement Funding's motion to strike Lillie's fraud count, but took the remaining matters under advisement. Following the hearing, Settlement Funding provided the court with supplemental memoranda detailing Utah law and the status of WebBank as a Utah industrial loan bank.

On February 10, 2006, the circuit court issued a letter opinion in which it declined to apply Utah law on the grounds that Settlement Funding produced no proper proof as to Utah law at trial. Without proof of Utah law, the circuit court reasoned it must presume Utah law to be identical to Virginia law and, under Virginia Code § 6.1-330.55, a loan with an interest rate in excess of twelve percent is usurious. Accordingly, the circuit court held Settlement Funding could collect only the principal sum of Lillie's loan, less credit for payments received, but could not recover interest or fees.

The circuit court also held the loan agreement violated the Truth in Lending Act because WebBank failed to provide mandatory disclosures to Lillie. The circuit court held that

5

because Lillie's statutory damages under the Truth in Lending Act would more than offset the amount Settlement Funding was entitled to recover under the loan agreement, Settlement Funding was not entitled to recover any amount from Lillie. The circuit court also awarded Lillie $47,164.60 plus interest in damages for usury under Virginia law, attorney's fees of $24,694.50 and costs.

We awarded Settlement Funding an appeal limited to whether the circuit court erred in (1) failing to construe the loan agreement under Utah law in accordance with the choice of law provision in the loan agreement and (2) applying Virginia usury statutes and concluding the interest rate for the subject loan was usurious.

DISCUSSION

If a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied. Paul Bus. Sys., Inc. v. Canon U.S.A., Inc., 240 Va. 337, 342, 397 S.E.2d 804, 807 (1990) (citing Union Central Life Ins. Co. v. Pollard, 94 Va. 146, 151-52, 26 S.E. 421, 422 (1896)). Paragraph 13 of the loan agreement provides that the loan transaction was completed in Utah, that the lender, WebBank, was doing business in Utah, and that the borrower agrees that "any and all disputes arising from or concerning

6

this Agreement . . . shall be determined in accordance with the laws of the State of Utah."

In its February 10, 2006 opinion letter, the circuit court acknowledged that Utah law would apply under this choice of law provision but declined to apply Utah law because "there was no proper proof produced at trial in respect to Utah law." The record in this case, however, does not support the circuit court's conclusion.

At trial, when asked what the substance of Utah's usury law was, Settlement Funding's counsel responded that "[t]here is no usury in Utah" and that he would "have that statutory citation pulled" and "quickly sent over" to prove the absence of usury law in Utah. Settlement Funding then submitted two post-hearing memoranda. The circuit court, in its opinion letter specifically indicated that it considered the first memorandum. In that memorandum, Settlement Funding again asserted that Utah has not established any limits on maximum rates of interest for consumer loans. Rather, Settlement Funding pointed out, "the unconscionability provision at Section 70C-7-106 of the Utah Code provides that the ceiling interest rate be determined by the market conditions." Settlement Funding also cited Utah Code 1943, 44-0-2, and Utah case law regarding usury.

These citations to Utah law provided the circuit court with sufficient information regarding the substance of Utah law.  See also Code § 8.01-386.  Therefore, the circuit court erred in refusing to apply Utah law in the construction of the loan agreement.[2]

Accordingly, we will reverse those portions of the judgments of the circuit court entering judgment in favor of Lillie based on her claim of usury under Code § 6.1-330.57 and awarding her damages, costs and attorneys' fees under that statute and remand the case for further proceedings.

                                   Reversed in part, and remanded.

---

[2] In light of this holding, we need not address Settlement Funding's remaining assignment of error.