# CIRCUIT COURT OF THE CITY OF NORFOLK

Bruce Nedelka
and Michele Nedelka

    v.

KIA Motors of America, Inc.

February 10, 2009

Case No. (Civil) CL07-3598-01

BY JUDGE CHARLES E. POSTON

This action was brought pursuant to Virginia's Motor Vehicle Warranty Enforcement Act, Virginia Code §§ 59.1-207.9, *et seq.*, commonly referred to as the "Lemon Law." The plaintiffs prevailed at trial and now seek an award of attorney's fees and costs. For the reasons stated below, the Court awards the Plaintiffs the sum of $23,850.00 for attorney's fees and the additional sums of $3,530.00 for expert witness fees and $79.00 as costs.

An award of attorney's fees in cases brought under the act is authorized by Virginia Code § 59.1-207.14:

> Any consumer who suffers loss by reason of a violation of any provision of this chapter may bring a civil action to enforce such provision. Any consumer who is successful in such an action or any defendant in any frivolous action brought by a consumer shall recover reasonable attorney's fees, expert witness fees, and court costs incurred by bringing such actions.

380

The Plaintiffs prevailed at trial of this action and, under the terms of the statute, are entitled to an award of reasonable attorney's fees, expert witness fees, and costs.

The action commenced with the filing of the complaint on June 14, 2007. A trial before a jury was held on July 9, 2008, and ended with a mistrial on the same date for reasons beyond the control of the parties or the Court. On August 4, 2008, another jury was empaneled, and on August 5, 2008, that jury returned a verdict for the plaintiff in the sum of $33,380.04. During the deliberations, the jury asked whether it could give an award in excess of the amount sought by the Plaintiffs. With the concurrence of counsel, the Court answered in the negative.

During the trial, which lasted two days, several fact witnesses testified, but neither party called expert witnesses. Indeed, there was no contest concerning the defect in the 2006 KIA Sedona EX. That vehicle, a mini-van, was equipped with sliding doors on each side behind the driver's seat. Those doors were equipped with a system whereby they opened and closed automatically. The most severe defect alleged was that the doors opened spontaneously, even while the vehicle was in motion. The Plaintiffs testified that their infant child rode in an infant car seat attached to the rear passenger seat, which is exposed when the sliding doors open.

At trial the Plaintiffs sought recovery for the following items:

1. All monthly payments made for the vehicle;

2. The down payment and any credit given for any traded-in vehicle; and

3. The payoff on the loan they obtained to purchase the vehicle reduced by 25¼ cents per mile for the mileage accruing from the commencement of the plaintiffs' possession of the vehicle until the date of the notice of nonconformity with a further reduction for the estimated cost to repair bumper damage.

The jury decided on its award after hearing evidence on these allegations. Before trial, the parties agreed that the issue of attorney's fees and costs would be submitted to the Court after the jury trial, if the parties were unable to agree on the amount. The Plaintiffs' memorandum in support of their motion for award of attorney's fees and costs details various attempts to settle the case. Apparently settlement foundered on the issue of attorney's fees and costs.

The Plaintiffs executed a document entitled "Retainer Agreement" on October 26, 2006. It purports to memorialize the agreement between the Plaintiffs and their attorney. By its terms, the agreement appears to be a bilateral contract that states certain duties and responsibilities of the Plaintiffs as well as of their attorney. It was not, however, executed by the Plaintiffs' attorney. The pertinent parts of that agreement read as follows:

Patty Anderson's time is billed at $200.00 per hour, and she will record her time (and court costs) as they are incurred. She has agreed to represent you, excluding any appeal of this matter, and will take in addition to those attorney's fees that the defendant agrees to pay to you in settlement or the court orders it to pay should the case be tried, including any multiplier factor, and excluding costs, including any punitive or treble damages which are recovered. If the court orders only partial payment of the accumulated attorney's fees or the defendant fails to pay all these fees, you *will* be responsible for the difference. In the event that a settlement offer from the defendant is received which does not pay all attorney's fees and costs accumulated, and unless otherwise agreed to by me, then the portion of attorney's fees and costs not paid for by the defendant(s) will come from that portion of the offer that is considered payment of your damages. No settlement offer will be accepted, however, unless it is with your approval.

You are responsible for all accrued costs incurred in this matter, including but not limited to, filing fees, expert witness fees, postage, copies ($.25/copy), long distance calls, etc. These costs typically average $1,500 to $ 2,000, excluding expert witness fees.

Based on this agreement, Plaintiffs' counsel seeks payment for 231.8 hour at the rate of $200.00 per hour for a total of $46,360.00 and $79.00 as costs plus an expert witness fee of $3,530.00 charged by Stephen L. Swann, Esquire, who testified for the Plaintiffs in support of their motion for attorney's fees.

Generally, in the absence of a statute or contract authorizing the award of attorney's fees, a prevailing party cannot recover attorney's fees from the losing party. This has been called the "American rule" in contrast to the "English rule" which reaches the opposite result. *West Square v. Communication Technologies*, 274 Va. 425, 433 (2007). When, as in the action at bar, there is authority for awarding attorney's fees to the prevailing party, that party must present a *prima facie* case that the requested fees are reasonable *and* necessary. *Id.*

The Supreme Court of Virginia has prescribed several factors to assist a trier of fact in determining the reasonableness of a request for attorney's fees in actions such as this:

1. The time and effort expended by the attorney;
2. The nature of the services rendered;

3. The complexity of the services;

4. The value of the services to the client;

5. The results obtained;

6. Whether the fees incurred were consistent with those generally charged for similar services;

7. Whether the services were necessary and appropriate;

8. The lawyer's experience, ability, and reputation.

*Id.* at 434; Virginia Legal Ethics Opinion No. 1606 (1994).

These factors provide guidance to the fact-finder, but there is no requirement that the fact-finder must consider all of the factors in every situation. *Id.* Nevertheless, the Court shall utilize these factors in evaluating the fee request.

### 1. *The Time and Effort Expended by the Attorney*

The original Plaintiffs' counsel showed that she had spent 260.1 hours working on the case. After discounting 28.3 hours, her final claim was for 231.8 hours of work on the case. Assuming that a week contains forty working hours, that figure approximates 5.8 weeks, over one month's time. A review of the time log reveals duplicative work and excessive time spent on rather routine pleadings and communications.

When one considers that the facts concerning the defective condition of the vehicle were largely uncontested and when one considers that the defect was so obvious that no expert testimony was required to assist the jury, it is difficult to justify the amount of time expended. Counsel is not assisted by secretarial or paralegal services, and it appears that a significant amount of effort expended could have been done by non-attorney assistance.

### 2. *The Nature of the Services Rendered*

The work rendered by counsel was typical of efforts required of a litigator in preparation for trial. She investigated the facts of her case, developed the evidence needed to present it, and performed the required legal research.

### 3. *The Complexity of the Services*

While these types of cases often present exceptionally complex issues, the case at bar involved relatively straightforward facts. Thus, the services rendered by counsel, while competent and professional, were not unusual for those attorneys involved in litigation.

### 4. *The Value of the Services to the Client*

From the clients' point of view, the services were invaluable. They received a jury verdict in the sum sought after many months of fruitless efforts to have the defect in their vehicle cured. The question that remains, however, is whether the fees charged by their attorney were reasonable and necessary.

### 5. *The Results Obtained*

The jury awarded the Plaintiffs the full amount sought. During oral argument the Defendant questioned the propriety of awarding attorney's fees in a sum exceeding the verdict. Neither party cited Virginia precedent addressing this question, but the Plaintiffs offered a number of cases from foreign jurisdictions addressing the issue.

It should be obvious that Virginia Code § 59.1-207.14 is a remedial statute enacted as a necessary incident to ensuring that aggrieved plaintiffs are not barred from the courthouse by an inability to pay attorney's fees in these types of cases. For the mass of the citizenry, the purchase of an automobile is one of the major investments of the family. It is not purchasing a luxury; the automobile in this region is a necessity. Fees charged by competent litigators often exceed the value of an automobile. If the attorney's fees awarded in such cases were limited to a proportion of the verdict, few plaintiffs could afford to seek vindication of the right granted by Virginia's "Lemon Law."

The Michigan Court of Appeals addressed this precise issue in 1995 in a case involving the Michigan Consumer Protection Act. The plaintiff experienced substantial difficulties with a new 1986 Mazda automobile while it was still under warranty and sued under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and applicable Michigan consumer protection statutes. After obtaining a jury verdict of $7,600.00, the plaintiff petitioned the trial court for an award of attorney's fees in the sum of $21,790.75 and the additional sum of $2,440.81 as costs. The trial court awarded as attorney's fees a sum equal to 40% of the verdict and $1,000 in costs. The Michigan Court of Appeals reversed and remanded the case for reconsideration of the award of attorney's fees and costs. Its explanation is most persuasive:

> In consumer protection as this, the monetary value of the case is typically low. If courts focus only on the dollar value and the result of the case when awarding attorney fees, the remedial purposes of the statutes in question will be thwarted. Simply

put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial statutes are intended.

*Jordan v. Transnational Motors*, 537 N.W. 2d 471, 474 (Mich. App. 1995).
The Court is not therefore persuaded by the Defendant's implied suggestion that the attorney's fee award should be, in some measure, proportional to the verdict. Nor does the Court accept the Plaintiffs' implication that the fee request itself is dispositive of the requirement that the attorney's fee award must be for reasonable and necessary services.

### 6. *Whether the Fees Incurred Were Consistent with Those Generally Charged for Similar Services*

The Plaintiff's expert witness, Stephen L. Swann, Esquire, testified that counsel's hourly rate of $200.00 was consistent with those generally charged for similar services by attorneys of similar experience and expertise in the greater Norfolk area. His office is in Arlington, Virginia. Philip Geib, Esquire, testified for the Defendant that an hourly rate of $125.00 would be customary in this area. Mr. Geib's office is located in Virginia Beach, Virginia.

### 7. *Whether the Services Were Necessary and Appropriate*

The Court does not question the necessity and appropriateness of the services rendered. The question concerns the expanse of those services and the time spent in providing those services.

### 8. *The Lawyer's Experience, Ability, and Reputation*

Counsel came to the bar some years ago, but has concentrated in this area of litigation for about five years. She is an experienced litigator and solo practitioner whose office is in the City of Richmond, Virginia. According to the testimony of Stephen L. Swann, Esquire, she has established a good

reputation among those whose practices focus on this type of litigation. The evidence does not disclose the extent of her experience, whether she has received specialized education in handling these types of cases, nor whether she has lectured or published about this area of the law.

Having considered these factors, the Court concludes that the necessary and appropriate services rendered to the Plaintiffs consumed 190.8 hours. The Court also finds that 25% of those hours comprised work normally performed by secretarial and paralegal personnel. The Court, then, will award the plaintiffs attorney's fees in the sum of $23,850.00 plus the sum of $79.00 as costs and $3,530.00 for the expert witness fee incurred in prosecuting their claim for attorney's fees.